UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL JABLONSKI,

    Plaintiff,                                    Civil Action No. 14-CV-13776

vs.                                              HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINITFF'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 9 and 10]. On March 27, 2015, the Court heard oral argument and took the motions under advisement.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying his application for Social Security disability insurance benefits. After plaintiff's application was denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing in January 2013 and issued a decision denying benefits in March 2013. In July 2014 the Appeals Council denied plaintiff's request for review, thereby leaving the ALJ's decision in place as the agency's final decision. Under § 405(g), the issue is whether the ALJ's decision is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination the Court does not review the matter de novo, and it may not weigh the evidence or make credibility findings. If

supported by substantial evidence, defendant's decision must be upheld even if substantial evidence would have supported a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

When he applied for benefits, plaintiff was 46 years old. He has a bachelor's degree in business and a master's degree in marketing. He has work experience selling real estate, cars, and medical equipment. Plaintiff claims he has been disabled since October 2009 due to a combination of impairments. He had a laminectomy and diskectomy at L4-5 in July 2009 (Tr. 478, 486) and a second diskectomy at L4-5 in January 2010 (Tr. 476, 484), and he has continued to complain of back pain and numbness in his right leg thereafter (Tr. 481-82, 502-04, 547, 549, 551, 606, 671, 673, 699, 702). Plaintiff had surgery on his left shoulder in April 2010 to repair a torn labrum (Tr. 499). He has received several injections for pain in his shoulder, hip, and back (Tr. 410-11, 425, 441, 488-89, 490-91, 492-93, 499, 512-13, 676-77, 689-90, 695-96, 705-06). Plaintiff has undergone sleep studies for treatment of obstructive sleep apnea (Tr. 505-11, 514-17, 523-25, 533-35, 542-44, 592-98, 602-05, 616-18, 668-70, 681-083, 691-94, 697-98, 720-25) and he has received regular psychotherapy for depression and anxiety (Tr. 328-406, 628-63, 773-88). At the hearing plaintiff indicated he has pain in his left shoulder, hip, and lower back (Tr. 147-48), numbness in his right leg, pain in his ankles (Tr. 149), numbness in his hands (Tr. 152), anxiety and depression (Tr. 152-53), and frequent headaches (Tr. 170). Plaintiff stated he can sit for 45 minutes, stand for 45 minutes, walk two or three blocks, and lift a gallon of milk (Tr. 151).

The ALJ found that plaintiff's severe impairments are "degenerative disc disease of the spine; degenerative joint disease of the left shoulder, left hip and left knee; history of Chiari

malformation[1] with implantation of shunt; obstructive sleep apnea (OSA); carpal tunnel syndrome (CTS); depression" (Tr. 127). The ALJ found that plaintiff cannot perform his past work, but that he has the residual functional capacity ("RFC") to do a limited range of light, unskilled, routine work with various restrictions on such things as climbing, reaching, and using foot controls. A vocational expert ("VE") testified to the existence, in Michigan's lower peninsula, of 3,000 inspector jobs, 1,000 "photocopy machine operator" jobs, and 1,000 "sorter" jobs that come within the parameters of the ALJ's hypothetical question. The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform.

        Having reviewed the entire administrative record, which is voluminous, and the parties' cross motions for summary judgment, the Court finds that the matter must be remanded for further proceedings because the ALJ failed to make certain critical findings and to incorporate those findings in his hypothetical questions to the VE. First is the issue of the side effects of plaintiff's medications. Plaintiff takes or has taken at various times during the relevant period a truly extraordinary number of medications for his many physical and mental impairments[2] including

---

[1] "Chiari malformations (CMs) are structural defects in the cerebellum, the part of the brain that controls balance. Normally the cerebellum and parts of the brain stem sit in an indented space at the lower rear of the skull, above the foramen magnum (a funnel-like opening to the spinal canal). When part of the cerebellum is located below the foramen magnum, it is called a Chiari malformation." http://www.ninds.nih.gov/disorders/chiari/detail_chiari.htm (last visited March 13, 2015).

[2] Plaintiff receives much of his medical care at the Hamilton Community Health Network North Pointe Clinic in Flint, which has listed his many problems as follows: fatigue, vitamin D deficiency, presence of cerebrospinal fluid drainage device, dysphagia (pharyngoesophageal phase), symptoms of benign prostatic hypertrophy with urinary obstruction, history of hydrocephalus, chronic kidney disease stage III, bilateral ankle pain, symptoms of hearing loss, chronic GERD, knee pain (left, chronic), tension headache, allergic rhinitis, left hip pain, osteoarthritis, right shoulder pain, anxiety, depression, obstructive sleep apnea, restless leg syndrome, toxic effect of venom, hyperlipidemia, anemia, essential hypertension, lumbar back

Fioricet, Fenofibrate, Imitrex (Sumatriptan), Provigil, Cozaar, Lansoprazole, Ranitidine HCL, Flonase, Clemastine Fumarate, Acetazolamide (Diamox), Lortab, Lipitor, Flomax, Zocor (Simvastatin), Proventil HFA, Ditropan, Bystolic, Cymbalta, Flexeril, Klonopin, Maxalt, Prevacid, Zantac, Zestril, Vicodin (Hydrocodone-acetaminophen), Mobic/Meloxicam, Neurontin, Gabapentin, Lyrica, Lisinopril, Amitriptyline HCL, Hydroxyzine HCL, Tramadol, Tessalon Perles, Loradamed, Bisacodyl, Duloxetine, Methylprednisolone, Modafinil, and Nebivolol (Tr. 26, 33, 60, 312, 321-24, 416, 436, 448, 800-02, 840-41).  Many of these medications have common side effects, including sleepiness/drowsiness, anxiety, headaches, tiredness, dizziness, confusion, trouble with concentration, trouble with sleep, and numbness.  *See* http://www.drugs.com/sfx/[drug name]-side-effects.html.  On his Function Report, plaintiff indicated that "pain medication generally keeps me from sleeping"  (Tr. 289) and that Cymbalta causes him "loss of focus," Flexeril causes him fatigue, Vicodin causes him sleeplessness, and Fior[i]cet causes him "concentration issues" (Tr. 295).  At the hearing the ALJ failed to inquire sufficiently into this issue.  After plaintiff mentioned the side effects of one of his medications (fatigue, frequency, and dry mouth caused by Diamox, Tr. 158), the ALJ changed the line of questioning.  Plaintiff also testified that he naps daily for an hour (Tr. 150), although he did not explain why.  A neurologist who examined plaintiff in July 2010 noted that he "takes at least two naps per week at around 1 p.m., three-four hours duration" (Tr. 506).  Neither the ALJ nor plaintiff's attorney asked plaintiff any follow-up questions on either his medication side effects or his napping.

        In somewhat of an understatement, the ALJ noted that plaintiff "has been prescribed

---

pain, autonomic neuropathy, migraine, and insomnia (Tr. 25, 92).  Plaintiff has also complained or urinary and bowel incontinence (Tr. 289, 481-82, 571, 699, 702, 712, 718).

significant medication" (Tr. 133) but he made no findings about the nature and extent of the side effects. The ALJ also stated, erroneously, that at the hearing plaintiff "did not appear to suggest that he required daily naps" (Tr. 130). Both the side effects of plaintiff's medications and his napping (which may or may not be a medication side effect) are medically and vocationally significant issues. Clearly, if plaintiff is experiencing any of the common side effects of any of his many medications, or if he needs to nap daily for an hour as he testified, his ability to work could be significantly affected if not ruled out altogether. And, of course, a VE's testimony cannot be used to prove the existence of work plaintiff can perform unless the testimony is given in response to a hypothetical question that "accurately portrays the claimant's physical and mental impairments." *Turner v. Comm'r of Soc. Sec.,* 381 F. App'x 488, 493 (6th Cir. 2010). On remand, the ALJ must (1) determine which medications plaintiff is taking and has taken during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects and adjust his findings as appropriate regarding plaintiff's RFC, and (3) incorporate these findings in proper hypothetical questions to the VE to determine whether work exists in significant numbers that can be performed by a person such as plaintiff experiencing such side effects. The ALJ must also make findings regarding plaintiff's alleged need to nap daily and, if the need is established, incorporate such findings in the RFC assessment and in proper hypothetical questions to the VE.

A second error that must be corrected on remand is defendant's apparent failure to consider approximately 112 pages of medical records. The pages marked Tr. 8 through Tr. 120 are not marked as exhibits and generally appear to post-date the ALJ's decision. Nor did the Appeals Council mention these records in its notice denying plaintiff's request for review. Of particular significance are records regarding plaintiff's alleged ankle pain. At the hearing plaintiff testified

that he has ankle pain at night (Tr. 149). In the medical records which defendant appears not to have considered, there is EMG evidence of "subacute to chronic tibial neuropathies at both ankles" (Tr. 23, 49) and x-ray evidence of "[t]endinosis of the peroneus brevis and possible remote injury of the anterior talofibular ligament" (Tr. 24). In April 2013 plaintiff rated this pain at 7 or 8 on a ten-point scale (Tr. 103, 110). This evidence certainly could affect plaintiff's ability to do light-level work because such work requires the worker to stand and walk for six hours during an eight-hour period. *See Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014). On remand, the ALJ must consider all of the overlooked records (Tr. 8-120), make specific findings regarding the nature and extent of plaintiff's ankle pain, adjust his findings as appropriate regarding plaintiff's RFC, and incorporate these findings in proper hypothetical questions to the VE.

In a similar vein, the ALJ failed to make findings regarding the nature and extent of the pain and numbness plaintiff alleges he experiences in his feet. Plaintiff testified he "get[s] shooting pains on occasion in both feet" (Tr. 149), but neither the ALJ nor plaintiff's attorney inquired further. In his Disability Report plaintiff listed problems with his feet as one of the conditions that limits his ability to work (Tr. 263) and in his Function Report plaintiff indicated that "[d]riving, standing, or walking over 45 minutes tends to cause increasing numbness in my leg and foot" (Tr. 295). Plaintiff has told his physicians that "[t]he more he walks, the more his right foot goes numb" (Tr. 529); that "[w]ith walking, standing he has an increase in his low back pain and has right foot and leg numbness" (Tr. 551); that "[w]hen he walks, his right foot becomes very numb and he . . . can't feel it. The bottoms of both feet (R>L) are in pain when he walks – he describes the pain as cramping, aching and zapping" (Tr. 600); and that "[h]e gets pain and cramping in both feet" (Tr. 623). While the ALJ briefly discussed plaintiff's "numbness/tingling . . . in the lower right

extremity" (Tr. 133) and plaintiff's "right lower leg intermittent sensation problems" (Tr. 134), he made no findings specifically about the pain and numbness in plaintiff's feet. It is not clear how a person can walk and stand for six hours during an eight-hour work day, and use foot controls occasionally, if his feet are numb and painful. On remand, the ALJ must consider this impairment, determine its nature and extent, and include these findings in his RFC assessment and in proper hypothetical questions to the VE.

        Likewise, the ALJ's analysis of plaintiff's right leg numbness is insufficient. Plaintiff testified that his "right leg goes numb" daily, causing him to fall "[a]bout once a month" (Tr. 149). Plaintiff has complained repeatedly to various physicians about this numbness causing him to fall (Tr. 410, 422, 529, 540, 549, 551, 555, 607, 671, 673).[3] The ALJ minimized the significance of this numbness, characterizing it as intermittent (Tr. 127), occasional and mild (Tr. 133), and noting that plaintiff does not use a cane, that his gait has been observed to be normal, and that he is able to engage in certain daily activities (Tr. 133-34). This characterization of plaintiff's right leg numbness is not supported by an objective review of the medical evidence. In September 2010 x-rays and CAT scans showed "[r]ight S1 radicular symptoms" and "advanced degenerative disease" (Tr. 551) and a CT scan showed "[m]ultilevel discogenic degenerative change of the lumbar spine . . . . Findings are most pronounced at L4-L5 and L5-S1" (Tr. 579). The same month an EMG showed "evidence of a chronic, mild right L5 radiculopathy with only mild ongoing motor denervation in the right medial gastronemius" (Tr. 607). In November 2010 an MRI showed a "persistent left lateral disc protrusion . . . causing moderate to severe narrowing of the left neural foramen and likely

---

[3] In June and December 2011, however, plaintiff indicated he had not fallen recently (Tr. 685, 699).

deforming the exiting left L4 nerve root" (Tr. 576). In December 2010 an EMG showed evidence of right L5 radiculopathy, chronic right S1 radiculopathy, and left L5 radiculopathy" (Tr. 600-01). A neurologist who reviewed these results in February 2011 indicated that plaintiff has "bilateral radiculopathies at L5-S1" and that his "L5 radic on the right appears to be getting worse, based on the EMG study" (Tr. 671-72). In December 2011 an MRI revealed "endplate degenerative signal changes within the lower lumbar spine. Some substantial neuroforaminal stenosis is again present at the L4-L5 and L5-S1 levels" (Tr. 571) and "a small centrally bulging disk at L4/L5 without significant foraminal narrowing" (Tr. 704). On this record, the ALJ's statements that "objective abnormalities" are lacking and that plaintiff's numbness is "mild" and "occasional" are unsupportable. On remand the ALJ must evaluate the objective evidence more closely, make specific findings as to the extent of plaintiff's leg numbness and the frequency of his falls, and include these findings in his RFC assessment and in his hypothetical questions to the VE.

The ALJ similarly erred in his analysis of plaintiff's carpal tunnel syndrome ("CTS"). Plaintiff testified that he drops things frequently and has numbness or tingling in his hands nightly (Tr. 152). While the ALJ found that plaintiff has mild bilateral CTS (Tr. 130), he did not explain why he found that this impairment can be accommodated by limiting plaintiff "to frequent handling and fingering and avoidance of exposure to excessive vibration" (Tr. 134). The ALJ acknowledged the CTS diagnosis "based on the EMG results," but he did not make clear he was aware of the evidence that plaintiff sought "evaluation of bilateral hand pain and numbness for 4-5 years. He describes trigger fingers, locking of the fingers when he uses them in certain positions, and growths on the dorsal DIP joints of both hands" (Tr. 727). Nor did the ALJ acknowledge plaintiff's hearing testimony that he wears braces on both wrists at night (Tr. 152). On remand, the ALJ must make

8

more specific findings as to the nature and extent of the pain and numbness in plaintiff's hands and wrists and include these findings in his RFC assessment and in his hypothetical questions to the VE.

The ALJ also erred in his evaluation of plaintiff's headaches. Plaintiff testified that he experiences incapacitating migraines six to eight times per month (Tr. 170). The ALJ rejected this testimony, finding that plaintiff does not experience migraines "with such frequency or intensity that he would be unable to fulfill the obligations of a fulltime work schedule" (Tr. 134).[4] However, the reasons cited by the ALJ do not withstand scrutiny. The ALJ noted that plaintiff's "headaches improved over the past several years after treatment of increased pressure in his head with VP shunt placement" (Tr. 709) and that "in 2010, the claimant had also reported that his headaches were significantly improved after he received better care for his sleep apnea" (Tr. 129).[5] Nonetheless, the fact that plaintiff's headaches improved does not mean he has none, and the ALJ did not quantify the frequency, intensity or duration of the headaches plaintiff still has. Further, the ALJ apparently believed plaintiff has been prescribed just one headache medication (Fioricet) (Tr. 129), whereas in fact, according to physicians at the University of Michigan Headache and Neuropathic Pain Center, where plaintiff "was referred for evaluation of episodic migraine headaches" in January 2012, plaintiff

---

[4] It is actually unclear whether the ALJ found that plaintiff does or does not experience headaches. While the ALJ clearly doubted that plaintiff experiences migraines six to eight times per month (Tr. 129, 134), he noted "other conditions which might contribute," including foraminal narrowing at two levels of plaintiff's cervical spine and "a history of surgeries to the face, sinus and throat" (Tr. 129).

[5] For the latter point the ALJ cites "Ex. 4F," which comprises 144 pages of records from the University of Michigan Health System (Tr. 475-618). After much searching the Court found the page containing the statement dated September 13, 2010, that "his headaches improved remarkably once his obstructive sleep apnea was managed" (Tr. 550).

> [f]or his headaches . . . has been taking gabapentin 200 milligrams t.i.d. He also takes Cymbalta 30 milligrams twice daily, mainly for mood stabilization, although also for its neuropathic pain properties. Mr. Jablonski uses a variety of different abortive medications including Fioricet, Vicodin, and Imitrex 100 milligrams. . . .

(Tr. 709.) Therefore, the ALJ's assessment of plaintiff's headaches appears to be based at least in part on a misperception of the record. On remand, the ALJ must make more specific findings about plaintiff's headaches, and include these findings in his RFC assessment and in his hypothetical questions to the VE.

Finally, the Court notes that the ALJ failed to make findings regarding plaintiff's incontinence, although at least one of the medical records indicates plaintiff has experienced both bowel and urinary incontinence with some frequency (*see* Tr. 712 ["bowel incontinence, perhaps once a month" reported in March 2012] and n.2, *supra*). On remand the ALJ must make findings as to the nature and frequency of this impairment and include these findings in his RFC assessment and in his hypothetical questions to the VE. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is hereby remanded for further proceedings as specified above. This is a sentence four remand under § 405(g).

                                                _s/ Bernard A. Friedman___
Dated: March 31, 2015                 BERNARD A. FRIEDMAN
     Detroit, Michigan              SENIOR UNITED STATES DISTRICT JUDGE